UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Charles Pickens, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Case No. 4:12-cv-1196 |
| | § | |
| ITT Educational Services, Inc. d/b/a | § | |
| ITT Technical Institute and | § | |
| Michael Fletcher, Jr. | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss, or in the alternative, to Stay this Action and Compel Arbitration ("Motion"). (Doc. No. 13.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED**. The action, with regard to ITT Educational Services, Inc. d/b/a ITT Technical Institute ("ITT") is stayed pending arbitration. The action against Defendant Michael Fletcher, Jr. ("Fletcher") will remain in this court.

### I. FACTS

In March 2009, Charles Pickens ("Pickens"), an African-American man, enrolled in courses at ITT's Webster campus to obtain his associate degree. Pickens soon began experiencing racial discrimination from other students, starting with an offensive racist joke in 2010. (Compl. ¶ 10.) Pickens reported the comment to ITT's dean. In September 2010, Fletcher allegedly displayed a hanging noose in his vehicle, where it was readily available. Pickens also reported this occurrence to an ITT instructor. (Compl. ¶12-13.) Pickens asked Fletcher why he displayed the noose in his vehicle. Fletcher retorted "I can do whatever I fuc*ing want!" Pickens

1

notified ITT Chair Reginald Garrett that he took great offense to Fletcher's hanging noose and that he felt threatened. Garrett took photographs of the noose and told Pickens he would take care of it. The noose allegedly was displayed for one more week. (Compl. ¶17.)

Another student asked Fletcher why he displayed the noose, and Fletcher allegedly flew into a rage. Fletcher began yelling racially-charged epithets including "I will kill you ni*ger!" and "Fuck you, you black motherfu*ker!" at Pickens. (Compl. ¶19.) Pickens alleges that Fletcher next went into his vehicle, pulled out a gun, and aimed it at Pickens. (Compl. ¶20.) When several students began to scream and run, Fletcher jumped into his vehicle and fled. He was subsequently arrested for having a prohibited weapon on an educational institution's property and for possession of narcotics.

Pickens brings two claims against ITT—race discrimination pursuant to 42 U.S.C. §1981 and negligence—and three claims against Fletcher—intentional infliction of emotional distress, assault, and battery. ITT filed this Motion because Pickens entered into an Enrollment Agreement with ITT that included a binding arbitration clause. ITT contends that the arbitration provision is valid and enforceable under the Federal Arbitration Act (the "FAA") with respect to all of Pickens' claims.

**II. LEGAL STANDARD**

The Supreme Court has read the FAA to establish a presumption in favor of the enforceability of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) *cited by Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002). However, courts, not arbitrators, decide whether and what issues a party can be compelled to arbitrate. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998).

Where a contract contains an arbitration clause, there is a presumption of arbitrability. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). The presumption of the enforceability of arbitration agreements applies equally to "claim[s] founded on statutory rights." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987). In determining whether the dispute falls within the scope of the arbitration agreement, "ambiguities...[are] resolved in favor of arbitration." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)).

Courts follow a two-step inquiry in considering a motion to compel arbitration under the FAA. First, a court must "determine whether the parties agreed to arbitrate the dispute in question." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 626 (1985). Second, a court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors,* 473 U.S. at 628. In this case, neither party has argued that external legal constraints foreclose arbitration. Thus, the Court will consider only the first inquiry.

The first factor is further broken down into two considerations: (1) whether there is a valid agreement to arbitrate between the parties and (2) if so, whether the dispute in question falls within the scope of that arbitration agreement. *Will-Drill Res., Inc. v. Samson Res. Co.,* 352 F.3d 211, 214 (5th Cir. 2003).

### III. ANALYSIS

**A.  Validity of the Arbitration Agreement**

3

Defendant ITT argues that Pickens signed the enrollment agreement in his capacity as a student, and the agreement is a binding, valid contract. Pickens asserts that he signed an arbitration provision to arbitrate his employment disputes, not disputes that arose out of his enrollment as a student. Pickens first enrolled as a student in March 2009. (Doc. No. 20-2, ¶ 4.) In December 2009, Pickens states he began working at ITT as a student worker. Pickens signed the enrollment agreement on December 9, 2009, and states that he believed he signed it as an employee. (Doc. No. 20-2, ¶ 7.) On the date that Fletcher attacked Pickens, October 13, 2010, Pickens was still a student but no longer worked as a student employee. (Doc. No. 20.)

The text of the agreement indicates that it is between a student and the school, not an employee and the school. Pickens specified his program of study, and the program costs are detailed in the agreement. The agreement also discusses financial aid, the school catalog, class schedule, fees, and withdrawing and terminating from the program. The agreement does not mention employment with ITT. Pickens is referred to as "Student" throughout the agreement and signed on the line that states "Student's Signature."

Pickens argues that the contract is invalid as it relates to Pickens' student enrollment. Because Pickens says he thought the agreement dealt with his employment with IIT, he argues that it should not govern the attack, which happened to him in his capacity as a student. Since he believed it was an employment contract, Pickens alleges no meeting of the minds took place. However, the determination of whether a meeting of minds took place is based on an objective standard of what the parties said and did, and not on their subjective state of mind. *Fuller v. Phillips Petroleum Co.*, 872 F.2d 655, 657 (5th Cir. 1989) (objective, not subjective, intent of the parties controls and, in the absence of an allegation of ambiguity as to the contract language, the instrument alone will be deemed to express the intent of the parties) *Copeland v. Alsobrook*, 3

S.W.3d 598, 604 (Tex. App. 1999); *see also* 1 Williston on Contracts, § 4:1 (4th ed.) ("the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract.") Pickens' subjective belief that he was signing what he thought was an employment agreement does not invalidate the enrollment agreement.

A second issue concerning the validity of the agreement is "the limitation of liability" clause in the enrollment agreement. The Court is concerned that the limitation of liability clause within the agreement could unlawfully limit Pickens' right to damages for his racial discrimination claim. A plaintiff who proves a cause of action under § 1981 may recover punitive damages if the plaintiff is entitled to an award of compensatory damages, even though nominal. *Beauford v. Sisters of Mercy-Province of Detroit, Inc.*, 816 F.2d 1104, 1108 (6th Cir.); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 (6th Cir. 2003); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir.1998). However, the limitation of liability prevents the recovery of punitive damages, and reads:

> (1) "In no event will student or the school be liable to the other party or any third party for any indirect, incidental, special, exemplary, consequential or punitive damages, regardless of the form of action (whether in contract, tort or otherwise) or even if the liable party has been advised of the possibility of such damages."
>
> (2) "In no event will the school's maximum liability to student for all damages arising out of or in any way related to this agreement (including any amendments or addenda to this agreement) or the subject matter of this agreement exceed the lesser of: (a) the actual direct damages incurred by student that were caused by the specific service or product provided by the school under this agreement that is the subject of student's complaint; or (b) the amount of tuition, fees and/or cost of any tools received by the school from or on behalf of student for the specific service or product provided by the school under this agreement that directly caused such damage." (Doc. no. 13 at 10, ¶18).

A number of cases have found that a limitation of remedies clause would significantly undermine Title VII's remedial purpose. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673

5

(6th Cir. 2003); *see also Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir. 1998) (noting that the arbitrability of discrimination "claims rests on the assumption that the arbitration clause permits relief *equivalent* to court remedies") (emphasis added); *Trumbull v. Century Mktg. Corp.,* 12 F.Supp.2d 683, 688 (N.D.Ohio 1998) (holding that an arbitration clause was unenforceable because it prohibited an award of punitive damages, which was available to the plaintiff under Title VII).

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors,* 473 U.S. at 628 (1985). Despite this statement in *Mitsubishi*, the Supreme Court has found that a clause limiting remedies does not foreclose the possibility of arbitration. In *Vimar Seguros y Reaseguros*, *S.A. v. M/V Sky Reefer,* 515 U.S. 528 (1995), the Supreme Court addressed the enforceability of foreign arbitration clauses. In *Vimar,* the Court separated the question of limitations of remedies from the issue of whether the parties had agreed to arbitrate that dispute. The Court stated that the existence of the statutory remedies at issue in that case did not prevent "parties from agreeing to enforce these obligations in a particular forum. By its terms, it establishes certain duties and obligations, separate and apart from the mechanisms for their enforcement." *Id.* at 535.

The Supreme Court developed this reasoning in *Pacific Health Systems, Inc. v. Book,* 538 U.S. 401 (2003). In that case, the plaintiff argued that the arbitration clause was unenforceable because the agreement did not allow the arbitrators authority to award extra contractual damages of any kind, including for punitive or exemplary damages. The Court, citing *Vimar*, recognized that the remedial limitations was a question for the arbitrator to resolve, since the court should

6

not speculate as to how the arbitrator might interpret the agreement and thus cast its enforceability into doubt. *Id.* at 407.

In this case, the limitation of liability clause is not within the arbitration clause of the agreement, but is instead a separate part of the enrollment agreement, which can be severed. The enrollment agreement reads that "if any limitation of liability conflicts with the substantive law governing this Agreement, the substantive law with respect to such limitation will control." (Doc. No. 13 at 10, ¶ 18.) When the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement. *James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1039 (S.D. Tex. 2012) (concluding that an arbitration agreement, with the cost-splitting provision severed, is otherwise enforceable); *Dominguez v. Finish Line, Inc*., 439 F. Supp. 2d 688, 691 (W.D. Tex. 2006) (finding that a forum selection clause in an employment agreement was unreasonable but could be severed); *Accord Great Earth Cos. v. Simons*, 288 F.3d 878, 890-91 (6th Cir.2002) (holding that, when agreement includes severability provision, intent of the parties and policy in favor of arbitration dictate that rest of agreement should be held enforceable). More specifically, a limitation of remedies provision can be severable, even when a discrimination claim is at issue. *Morrison*, 317 F.3d at 675. Thus, the arbitrator can sever the limitation of remedies provision if he or she interprets the agreement to be otherwise valid. The Court therefore concludes that the enrollment agreement was legally entered into and contains a valid arbitration clause.

**B. Scope of the Arbitration Agreement**

Alternatively, Pickens argues that he signed an arbitration provision to arbitrate his enrollment disputes, not a criminal attack on him by a fellow student. The enrollment agreement reads in relevant part:

> The following procedure shall apply to the resolution of any dispute arising out of or in any way related to this Agreement, any amendments or addenda to this Agreement, or the subject matter of this Agreement, including, without limitation, any statutory, tort, contract, or equity claim (individually and collectively, the "Dispute")….(b) If the Dispute is not resolved pursuant to the School's Student Complaint/Grievance Procedure or through other informal means, then the Dispute will be resolved by binding arbitration between the parties…." *See Exhibit A,* pg. 5 of 6 (emphasis added).

Pickens argues that the language "related to this agreement" and "subject matter of this agreement" indicates that the dispute must be related to matters dealing with schedules, career services, school fees, and the like. However, the arbitration agreement indicates that it is meant to be read broadly. When determining the scope of an arbitration clause under the FAA, the arbitration clause is characterized as narrow when the language of the clause requires arbitration of disputes "arising out of" the agreement, whereas the clause is considered broad when it includes language such as "any dispute that arises out of or relates to" the agreement, or disputes that are "in connection with" the agreement. 9 U.S.C.A. § 4. *Coffman v. Provost * Umphrey Law Firm, L.L.P.,* 161 F. Supp. 2d 720 (E.D. Tex. 2001) *aff'd sub nom. Coffman v. Provost Umphrey LLP*, 33 F. App'x 705 (5th Cir. 2002).  The agreement Pickens signed had a broad arbitration clause agreement. Furthermore, it did not restrict the agreement's scope to contract claims, but included tort, statutory and equity claims. Pickens' negligence claim would fit squarely within the tort claim. *Lester v. Advanced Envtl. Recycling Technologies, Inc*., 248 F. App'x 492, 497 (5th Cir. 2007) (compelling arbitration for a negligence claim). Additionally, courts have found that Title VII claims can be heard under such an arbitration clause. *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996) (we conclude that the district court was correct when it

found that "any other disputes" was sufficiently broad to encompass Rojas' Title VII claims) *See also Crawford v. West Jersey Health Sys.*, 847 F.Supp. 1232, 1243 (D.N.J.1994) (Title VII claim encompassed by arbitration clause requiring arbitration of "any dispute ... regard[ing] the interpretation or performance of any part of this Agreement"); *DiCrisci v. Lyndon Guar. Bank*, 807 F.Supp. 947, 950-51 (W.D.N.Y.1992) (Title VII claims encompassed by arbitration clause requiring arbitration of "any dispute").

Pickens argues that "this case is rooted in criminal assault and battery" and he could "maintain these claims without reference to his capacity as a student at ITT." (Doc. No. 20.) In support, Pickens cites *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339 (S.D. Tex. 2008) *aff'd and remanded*, 583 F.3d 228 (5th Cir. 2009), a case where an employee brought an action against her former employer and several co-workers after she was allegedly raped while on assignment overseas. In that case, this Court ordered to arbitration the plaintiff's claims of Title VII violations, breach of employment contract, fraud in the inducement of the employment contract and arbitration clause, and premises liability because such claims stemmed from Jones' employment. The assault and battery claims, intentional infliction of emotional distress, negligent hiring, and false imprisonment claims could have been alleged regardless of Jones' employment, and thus did not fall under the scope of the arbitration clause. *Jones,* 625 F. Supp. 2d at 352. The Eleventh Circuit case *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011) is also instructive. In that case, an employee alleged that she was drugged and raped by fellow crewmembers, and that the employer refused to provide her with proper medical treatment and intentionally destroyed evidence of the rape. The court found that some of her claims arose directly from employee's undisputed status as a "seaman" and thus fell within the scope of the arbitration provision. However, the court found that the employee's claims of intentional

9

infliction of emotional distress, false imprisonment, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation could have been brought even if the employee had been a passenger on the cruise line, rather than an employee. *Id.* at 1220.

Pickens' claims can be distinguished from *Jones* and *Princess Cruise lines* because they rely upon his status as a student. Pickens' negligence claims could not be asserted without reference to his status as a student, nor does Pickens attempt to assert them without mentioning his student status. Pickens argues in his complaint that "Defendant ITT discriminated against Plaintiff which led to the loss and impairment in whole or part of benefits, privileges, and terms and conditions of plaintiff's status *as a student*," and "Defendant ITT was negligent in a variety of ways including…failing to adequately or properly supervise, monitor, and/or implement policy involving *the safety of students*." (Doc. No. 1, ¶ 28, 31.) Additionally, Pickens' negligence claim is partly predicated on the fact that ITT allegedly knew that Pickens' was facing racial slurs and threats. Fletcher's attack on Pickens was allegedly foreseeable because Pickens reported the noose near Fletcher's car to ITT Chair Garrett. The school's duty to Pickens also arises from his status as a student. The Court acknowledges that schools may owe non-student invitees the duty of keeping the premises reasonably safe. *See, e.g., Sch. Bd. of Palm Beach County v. Anderson*, 411 So. 2d 940 (Fla. Dist. Ct. App. 1982) (school had duty to father who was on school grounds to collect student's records and was subsequently shot); *Yates v. Johnson County Bd. of Com'rs*, 888 N.E.2d 842 (Ind. Ct. App. 2008) (if circus patron on school property was a business invitee, school corporation owed her a duty). However, in this case, the school had a duty to Pickens, because he was enrolled as a student and reported his mistreatment to the school.

Pickens' §1981 claim also stems from his status as a student, and the enrollment agreement he signed as a student. In his Complaint, Pickens alleges that the "intentional interference consisted of discrimination of a *continuous nature*" and "Defendant ITT, through its agents, supervisors, or employees, discriminated against Plaintiff which led to the loss and impairment in whole or part, of benefits, privileges, and terms and conditions of *Plaintiff's status as a student*. (emphasis added) (Doc. No. 1, ¶ 27, 28.) ITT would be able to discriminate on a continuous basis only because Pickens, as a student, informed the school of the racial discrimination he was facing from other students. Additionally, Pickens' Complaint grounds his §1981 claim in his status as a student. Thus, both of Pickens' claims are a result of his status as a student, and are within the scope of the arbitration agreement.

## C. Arbitration Agreement with respect to Michael Fletcher

Defendant Fletcher is represented by counsel, and has answered Pickens' Complaint (Doc. No. 10.). Fletcher has not joined in ITT's Motion, nor is he opposed to it. Neither ITT nor Fletcher argue that Pickens' claims against Fletcher should be arbitrated. Additionally, the agreement plainly does not govern Pickens' claims against Fletcher. The enrollment agreement reads that "the scope of arbitration will be limited to the Dispute between the Student and the School…no claims of any other person will be consolidated into arbitration." (Doc. No. 13, at 11.)

The Court recognizes that it does not have original jurisdiction over Pickens' claims against Fletcher since intentional infliction of emotional distress, assault, and battery are all based in state law. Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact'

11

and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966)). So long as one claim in an action presents a federal question on the face of the well-pleaded complaint, a court can exercise jurisdiction over the entire constitutional case or controversy. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553-53 (2005). Section 1367(c) recognizes that supplemental jurisdiction is discretionary in certain circumstances, including, as occurred here, where the court dismisses or stays the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). When those claims falling within a court's original jurisdiction are no longer in the case—here, because they have been referred to arbitration—the court has authority under § 1367(c) to choose whether to exercise supplemental jurisdiction and has inherent authority to remand the remaining claims to state court. *ESAB Group, Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 393-95 (4th Cir. 2012), *Gray v. Sage Telecom, Inc*., 410 F. Supp. 2d 507, 512-13 (N.D. Tex. 2006) (supplemental jurisdiction over state law claims is a doctrine of discretion, not of plaintiff's right). Thus, the Court exercises its discretion to retain supplemental jurisdiction of Pickens' claims against Fletcher, as requested by Pickens in his Response. The Court stays Pickens' claims against ITT pending arbitration.

**IT IS SO ORDERED.**

    **SIGNED** at Houston, Texas, on this the 19th day of October, 2012.

                                                 **KEITH P. ELLISON**
                                                 **US DISTRICT COURT JUDGE**