UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Charles Pickens, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | Case No. 4:12-cv-1196 |
| | § | |
| | § | |
| Michael Fletcher, Jr. | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 46) and

Plaintiff's Motion for Summary Judgment (Doc. No. 50.) After considering motions, responses,

and the applicable law, the Court concludes that Defendant's Motion must be **GRANTED IN**

**PART** and **DENIED IN PART**, and Plaintiff's Motion must be **DENIED**.

## I.      FACTS[1]

This case stems from an incident that occurred at the ITT Tech campus on October 13,

2010.[2] Charles Pickens ( "Pickens"), an African American student, and Michael Fletcher, Jr.

("Fletcher"), a Caucasian student, were enrolled as students at ITT. Fletcher displayed a hanging

noose in the rear view mirror of his truck beginning in March 2007. (Michael Fletcher Dep.,

19:10-17, March 8, 2013.) Fletcher alleges that he displayed the noose because he was a member

of the military unit that captured, and eventually hanged, Saddam Hussein. (Fletcher Dep. 30:1-

---

[1] The following facts are undisputed, except where noted.
[2] Although Defendant's brief argues that the date in question is October 6, 2013, Fletcher's deposition indicates that October 13, 2010, the date put forward by the Plaintiff, "sounds about right" since he could not recall the exact date (Fletcher Dep. 42:10-12.)

7.) Fletcher admitted to knowing, before enrolling at ITT, that a noose was historically offensive to some African-Americans. (Fletcher Dep. 17:10-22.)

A few weeks prior to October 13, 2010, Pickens initially approached Fletcher and told him he was offended by the noose that was displayed in Fletcher's vehicle in the parking lot of ITT. (Fletcher 20:11- 21:18.) According to Fletcher, Pickens' manner was aggressive. (*Id.* 21:11-23:18.) Fletcher also alleges that Pickens mocked Fletcher for being a "toy soldier" and "playing army." (*Id.* 30:1-7.) Fletcher stated that he did not report this conduct to ITT Tech, and did not report feeling threatened. (*Id.* 24:1-3, 11-13.) Pickens denies that he approached Fletcher in an aggressive manner, and states that he never referred to Fletcher as being a "toy soldier" and "playing army." (Doc. No. 53-1, ¶ 4, 5.) Fletcher responded to Pickens' statement that Pickens was offended by the noose by stating, "I really don't care. You can go fuck yourself." (Fletcher Dep. 24:21 – 25:17 and 27:2-9.) Plaintiff notified ITT Chair Reginald Garrett that he was offended by Fletcher's conduct. (Doc. No. 53-1, ¶ 13.)

Fletcher claims there was a second encounter with Pickens in which Pickens asked Fletcher why the noose was still in open view. (Fletcher Dep. 27:16- 28:3.) During this incident, Pickens was seated; Fletcher was walking. (*Id.* 29:16-25.) They were 20 feet apart. (*Id.* 30:16-17.) Plaintiff alleges that once again Fletcher told Pickens to "go fuck himself." (*Id.* 28:2-3.)

### Fletcher's version of the events of October 13, 2013

Fletcher states he was leaving his class on the night of October 13, 2013, and observed Pickens and Jarvis Washington, another ITT student, sitting at a table by a coffee machine. (Fletcher Dep. 42:15-17.) Fletcher alleges that either Pickens or Washington yelled "If you won't remove the noose, we'll come and remove it for you."(Fletcher Dep. 42:13-43:7; 47:11-23.)

According to Fletcher, Pickens and Washington followed him to his vehicle. (Fletcher Dep. 54:9-13.) Fletcher states that he rushed to his vehicle to leave, and looked up to observe "two large men heading straight towards my driver's side door." *Id.* Fletcher alleges that both Pickens and Washington were much bigger than he. Fletcher then pulled his gun out of the glove box. He claims Pickens was eight feet away. (Fletcher Dep. 54:18-21.)

Fletcher says that he then "retrieved" [his] gun out of [his] glove box, [he] removed the magazine, [he] locked the slide in an open position…" (*Id.* 55:12-17.) Fletcher said he also dropped the magazine and locked the gun back. (*Id.* 55:16-17.) Fletcher never saw Pickens with a weapon. (*Id.* 76:9-20.) Fletcher did not start his car, exit the parking space, and leave, because he did not feel an immediate threat. (*Id.* 61:21-25.) Fletcher alleges that, at this point, Pickens and Washington screamed and yelled that Fletcher should shoot them. (*Id.* 55:4-25.) According to Fletcher, the gun was not pointed at Pickens and Washington, nor is he sure that the two men saw the gun. (*Id.* 61:8-11.) However, Fletcher did admit that the "sound of the slide of the Beretta" was made known to Pickens as it sounded like "metal against metal." (*Id.* 65:1-16.)

Fletcher than pulled out of the parking lot, and fled the scene. (*Id.* 66:8-18) He was soon detained by at least four Webster Police Department squad cars, and was arrested for fleeing the premises and convicted of having a prohibited weapon on an educational institution's property (*Id.* 66:19:22, 67:16-20.) That same day, Charity Lanier, ITT Academic Dean, informed Fletcher that he was expelled. (*Id.* 72:13-14.) Fletcher also relies on an email sent by Leslie Scott, a director at ITT, stating that her understanding was that "he never pointed a gun at anyone." (Doc. No. 46-3.) Scott was not present when the events occurred.

**Pickens' version of the events of October 13, 2013**

On October 13, 2013, Pickens and Washington, another ITT student, were in the smoking area outside of ITT, near the parking lot. (Doc. No. 53-1, ¶ 3.) According to Pickens, it was another student—not Pickens—who asked Fletcher why he continued to display the noose. Pickens alleges that Fletcher became angry, aggressive, and began yelling racially-charged epithets at Pickens, including: "I will kill you nigger!," "Fuck you, you black motherfucker!," "Fuck you, you punk ass nigger." *Id.* While Fletcher argues that he was intimidated by Pickens' large size, Pickens disagrees, pointing to Fletcher's own testimony that he is 6'6", weighs 241 pounds, and is a large man himself. (Fletcher Dep. 23:9-12.) Pickens denies that he called Fletcher a toy soldier, chased him, begged Fletcher to shoot Pickens, approached Fletcher's vehicle, and threatened to remove the noose. (Doc. No. 53-1, ¶¶ 4-8.)

After allegedly yelling racial epithets at Pickens, Fletcher then went to his vehicle and pulled out his gun.  (Doc. No. 53-1, ¶ 3.) While Fletcher alleges that he did not point the gun at Pickens, Pickens alleges that the gun was aimed directly at him. (*Id.* ¶ 9.) Pickens states he did not know if the gun was loaded or not, nor did he beg Fletcher to shoot him. (*Id.* ¶ 10.)

Pickens supports this testimony with the accounts of Washington and Charity Lanier. According to Washington, Fletcher interrupted Pickens and Washington's conversation, approached them in a threatening manner, and used profanities and racial slurs towards them (Doc. No. 51-1, ¶ 4.) Washington alleges that Fletcher yelled "I know you all are talking about me and my noose and I can do what I want to do!"(*Id.* ¶ 5.) Washington also alleges that he saw Fletcher go into his truck, retrieve and cock a gun, and aim it directly at Pickens. (*Id.* ¶6.) Lanier, the Academic Dean, phoned the Webster Police Department and advised "Several students observed male cock the gun." (Doc. No. 51-3 (Webster Police Report); Doc. No. 51-16 (ITT records).) On that same day, Lanier expelled Defendant Fletcher and secured a criminal trespass

against him. (Doc. No. 51-16.) Lanier indicated that the incident was motivated by race. *Id.* Pickens alleges that he feared for his life and has suffered deep emotional anxiety[3] because of the events occurring on October 13th. *Id.*

## II. LEGAL STANDARD

Summary judgment is warranted when a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

## III. ANALYSIS

---

[3] Plaintiff alleges that he has suffered extreme fear, paranoia, sleeplessness, mood swings, nightmares, embarrassment, sadness, helplessness, irritability, nervousness, withdrawal, anger, frustration, poor concentration, feelings of inadequacy, among other things. (Doc. No. 53-1, ¶ 16.)

Before the Court addresses the merits of the parties' motions, it will first attend to Fletcher's preliminary arguments that 1) the Court should reject Pickens' Motion as Pickens represented to the Court she would not file a motion for summary judgment, and 2) Pickens' references to the Complaint should be disregarded because the Complaint is not competent summary judgment. First, the Court notes that neither party represented to the court that he believed that this case could be resolved through dispositive motions. Before the dispositive motion deadline, Pickens believed that it would not be necessary to file one. However, the Court did not rely on this representation in any way, nor has Fletcher demonstrated that he was harmed by or relied on Pickens' statement. The Court will not strike Pickens' motion solely because a month before the dispositive motion deadline, Pickens believed a dispositive motion would not be necessary.

The Court does find that Pickens' Complaint is not competent summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (unverified complaint does not constitute competent summary judgment evidence). However, where Pickens has supported a statement with an affidavit, the Court may consider the affidavit, as long as it is based on personal knowledge and creates a fact issue, even if the affidavit is arguably self-serving. *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011). Thus, the Court will disregard statements supported solely by Pickens' Complaint.

**1. Assault and Battery**

Pickens argues that assault and battery is a single claim under Texas state law, and the terms can be used interchangeably. In contrast, Fletcher argues that assault and battery are distinct claims, and battery requires physical touching. Under the Penal Code, the common law actions of assault and battery are addressed simply as assault. *See* Tex. Pen.Code Ann. §

22.01(a). The elements for assault are the same in civil and criminal cases. *See Wal–Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 523 (Tex.App.-San Antonio 1996, writ denied). Historically, civil assault was a verbal or physical threat made with the intent to place another in fear of physical injury if the threat does, in fact, place that person in fear. *Olivas v. State*, 203 S.W.3d 341, 344-45 (Tex. Crim. App. 2006). However, many states statutorily expanded the narrow common law definition of criminal assault to include the tort-based definition of assault as well. *Id.* Thus, "assault and battery" was both the successfully communicated threat to injure physically and the actual act of doing so, that is, carrying through on that threat. *Id.*  However, most states also criminalize assault where battery does not occur, termed "assault by threat". *Id.* The Texas Penal Code provides for three categories of assault—(1) assault with actual bodily injury, (2) threatening another with imminent bodily injury, or (3) causing physical contact with knowledge that contact is offensive. *See* Tex. Penal Code Ann. § 22.01 (West 2011).

Fletcher argues that summary judgment is appropriate for Pickens' battery claim, since there was no contact with clothing or an object closely identified with the body. However, Tex. Penal Code Ann. § 22.01(a)(2) defines a category of assault that does not require touching or bodily contact. Fletcher's conduct best fits the elements of this section of the assault statute. Texas's assault by threat statute states, in pertinent part: "A person commits an offense if the person ... intentionally or knowingly threatens another with imminent bodily injury[.] *Id.* In so far as Fletcher argues Pickens' assault and battery claim must be dismissed because there was no touching, the Court must deny Fletcher's summary judgment, since Fletcher's alleged conduct fits one statutory definition of assault.

Fletcher also argues that Pickens has failed to meet his burden and present evidence that Fletcher intentionally or knowingly threatened Pickens with imminent bodily injury. Fletcher

alleges that there is no evidence that Pickens suffered fear of imminent bodily injury. Fletcher

further claims that, because Pickens was screaming, dancing in circles, yelling, and directing

Fletcher to shoot Pickens, Pickens has not proven that he suffered any fear. The Court notes that,

at the summary judgment stage, the burden is not on Pickens to prove the elements of the

offense. Rather, summary judgment is warranted when a party establishes that there is no

genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P.

56(c); *Celotex*, 477 U.S. at 322-23.  Additionally, all justifiable inferences should be drawn in

the nonmovant's favor. *Anderson,* 477 U.S. at 255.

A clear dispute of a material fact exists here. According to Fletcher, Pickens began

yelling at Fletcher and daring him to shoot Pickens. (Fletcher Dep. 55:4-25.) Fletcher also

disputes ever threatening Pickens, or yelling racial epithets towards him. (*Id.* 43:9 -24.) Pickens

disagrees with Fletcher's version of events, and denies that he yelled at Fletcher and told Fletcher

to shoot him. In Pickens' version of the events, Fletcher flew into a rage, became incredibly

aggressive and began yelling racially-charged epithets directed towards Pickens. (Doc. No. 53-1,

¶ 3.) Pickens alleges he was fearful of Fletcher. *Id.*

Fletcher claims that he unloaded the gun because he did not want to cause Pickens

imminent bodily injury. Pickens disagrees, arguing that Fletcher purposefully made the sound of

the slide of the Beretta known to Pickens to threaten him, and then pointed the gun at Pickens.

(Fletcher Dep.  65:1-16.) Whether the gun contained bullets, and whether it was pointed towards

Pickens, are material facts as to which there is a genuine issue. Pickens alleges that he had no

way of knowing if the gun was loaded or not. (Doc. No. 53-1, ¶ 3.) Furthermore, even if the gun

contained no bullets after Fletcher dropped the magazine, assault by threat does not require a

weapon actually to be used, but requires only that a defendant threaten another with imminent

bodily injury. Fletcher's alleged verbal threats, including "I will kill you nigger!," with the gun in his hand, might be sufficient to meet the elements of the offense. *See Hill v. State*, 844 S.W.2d 937, 938 (Tex. App. 1992) (verbal threat may be sufficient to establish assault if it refers to imminent bodily injury rather than future bodily injury), *see also Tanksley v. State,* 656 S.W.2d 194 at 196 (Tex.App.—Austin 1983, no pet'n) (prisoner threatening jailer he would stab jailer in the eye if jailer entered cell, and showing sharp weapon he had fabricated, was sufficient for threat to be assault); *see also Lewis v. State*, 984 S.W.2d 732, 734 (Tex. App. 1998); *Brown v. State*, 960 S.W.2d 265, 268 (Tex. App. 1997) (in the context of an aggravated sexual assault, courts have determined that where the "objective facts of the assault would naturally cause the victim fear for life or serious bodily injury, as where a deadly weapon, explicit threats, or excessive force or violence are used, it is reasonable to assume that the victim had the requisite level of fear in the absence of some specific evidence to the contrary.") Because there is a genuine issue of material fact with respect to assault and battery, both summary judgment motions are denied.

## 2. Intentional Infliction of Emotional Distress

Fletcher argues that Pickens cannot meet the requirements for intentional infliction of emotional distress ("IEED") because of the limited nature of the claim. Fletcher contends that the IIED claim is a "gap-filler" claim which applies only under special circumstances when more established torts do not permit recovery. *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex.1998); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004). The Supreme Court of Texas has noted that the tort's "clear purpose" was "to supplement existing forms of recovery by providing a cause of action for egregious conduct" that might otherwise go unremedied. *Id.* "Where the gravamen of a plaintiff's complaint is really another

tort, intentional infliction of emotional distress should not be available." *Id; Vaughn v. Drennon*, 372 S.W.3d 726, 732 (Tex. App. 2012); *Stewart v. Lexicon Genetics, Inc.,* 279 S.W.3d 364, 372 (Tex. App. 2009). Because an assault and battery claim is available to provide redress to Pickens, the Court must grant Fletcher's summary judgment motion, and deny Pickens' summary judgment motion on Pickens' IIED claim.

Fletcher also argues that his conduct, even if the Court accepted Pickens' allegations, was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007). In order to recover at trial on his state-law claim of intentional infliction of emotional distress, Pickens would have to prove that Fletcher (1) acted intentionally or recklessly (2) in an extreme and outrageous manner (3) that caused him to suffer emotional distress (4) that was severe. *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 195 (5th Cir.1996); *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Whether a defendant's conduct is extreme or outrageous enough to permit recovery, as a matter of law, is within the province of the court. *Atkinson v. Denton Publishing Co.,* 84 F.3d 144, 151 (5th Cir.1996).

Fletcher's alleged conduct is likely within the realm of extreme and outrageous conduct because of the racial slurs and weapon involved. The Court recognizes that a finding of extreme and outrageous conduct is rare, and often involves incidents of repeated harassment. In *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 307 (5th Cir.1989), the court recognized that the supervisor's act of placing checks in the employee's purse to make it appear that she was a thief and to put her in fear of criminal prosecution was extreme and outrageous. In addition, in *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1145 (5th Cir.1991), the court found extreme and

outrageous the employer's actions to humiliate the plaintiff, a long-time executive with a college education and thirty years' experience, by requiring him to do menial janitorial duties.

However, courts have been reluctant to find an IIED claim in many other cases. *Von Beck-Lutes v. Arning and Arning*, 484 F. Supp. 2d 585 (W.D. Tex. 2007) (defendants' alleged conduct in assaulting husband at his wife's funeral was not sufficiently severe and outrageous to state an IIED claim.); *Garcia v. Andrews,* 867 S.W.2d 409 (Tex.App.-Corpus Christi 1993, no writ) (conduct of manager who made sexually suggestive and embarrassing remarks to plaintiff, observed plaintiff from top to bottom making her feel as if she was being undressed, was not extreme and outrageous); *Horton v. Montgomery Ward & Co.,* 827 S.W.2d 361 (Tex.App.-San Antonio 1992, writ denied) (conduct of co-worker who called plaintiff names, committed assault and battery, hit her with a wad of paper, placed rattlesnake rattlers in her desk, and defaced her pictures was not extreme and outrageous); *Gearhart v. Eye Centers of America, Inc.,* 888 F.Supp. 814 (S.D.Tex.1995) (supervisor's comment about plaintiff sleeping with him, sexual comments about other women, and touching plaintiff's breasts and buttocks was not extreme and outrageous conduct). After attempting to analogize the allegations of this case to the existing Texas case law, the Court finds that the conduct rises to the level that reasonable minds could disagree whether it was extreme and outrageous. *See* Tex.R. Civ. P. 166a(i); Restatement (Second) of Torts § 46.

Fletcher also argues that Pickens has not alleged sufficiently severe emotional distress to meet the third and fourth requirements for an IIED claim. "Emotional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *See GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999). Severe emotional distress, on the other hand, is distress that is so severe that no reasonable person could be

expected to endure it. *Id.* Pickens' evidence consists of his affidavit alleging that he experienced a litany of symptoms, including, extreme fear, paranoia, sleeplessness, mood swings, nightmares, embarrassment, sadness, helplessness, irritability, nervousness, withdrawal, anger, frustration, poor concentration, feelings of inadequacy, among other things. (Doc. No. 53-1, ¶ 16.) Although not an absolute requirement to prove an IIED claim, Pickens did not see a doctor after the alleged assault to help him deal with the distress. *Yelverton v. Graebel/Houston Movers*, *Inc.*, 121 F. Supp. 2d 604, 614 (E.D. Tex. 2000); *Higginbotham v. Allwaste, Inc*., 889 S.W.2d 411, 417 (Tex. App. 1994) (seeing a doctor is evidence going to severity of emotional distress); *Vasquez v. City of Grand Prairie*, 3:07-CV-0059-D, 2008 WL 3895396 (N.D. Tex. Aug. 21, 2008) (while plaintiff alleged that he suffers from emotional distress that requires treatment, there is no evidence presented indicating what treatment he received). However, proof of feeling depressed, confused, frightened, angry, scared, and changes in physical appearance and demeanor can also establish emotional distress. *See, American Medical International, Inc., v. Giurintano,* 821 S.W.2d 331, 343 (Tex.App.—Houston [14th Dist.] 1991, no writ); *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 460 (Tex.App.—Austin 1989, no writ).  Here, Pickens' testimony may be sufficient proof of severe emotional distress, when combined with the context of the Fletcher's alleged conduct.

Regardless, the Court finds that the IIED claim is foreclosed as Pickens has another avenue to seek a remedy. Therefore, Fletcher's summary judgment motion is granted, while Pickens' summary judgment motion is denied on the issue of IIED.

## IV. CONCLUSION

As a genuine issue of material fact remains, both parties' summary judgments are **DENIED** with respect to the assault and battery claim. Fletcher's summary judgment motion is

**GRANTED** with respect to the IIED claim, while Pickens' summary judgment motion is

**DENIED**.

      **IT IS SO ORDERED.**

      **SIGNED** at Houston, Texas on this the 11th day of June, 2013.

_____

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**